# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAURETTA GRADY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11-cv-1531 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| OCWEN LOAN SERVICING, LLC, ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER AND OPINION

In this case, Plaintiff Lauretta Grady contests 80 charges, disbursements, or adjustments on her mortgage loan, which is serviced by Defendant Ocwen Loan Servicing, LLC. This matter is now before the Court on Defendants' partial motion for summary judgment [67] and Plaintiff's cross-motion for summary judgment [75]. For the reasons stated below, the Court grants Defendants' partial motion for summary judgment [67] and denies Plaintiff's cross-motion for summary judgment [75]. The only claim remaining for disposition is Plaintiff's claim that OLS charged for excessive valuations.

**I.      Background**

Sometime in 2002, Plaintiff Lauretta Grady purchased her home located at 2547 West 118th Street in Chicago, IL. To finance the purchase, Grady signed a note, secured by a mortgage, with Ameriquest Mortgage Company ("Ameriquest") for a total amount of $168,000.000. On January 25, 2005, Defendants Ocwen Loan Servicing, LLC ("OLS"), a company that services residential mortgage loans that are initiated through other lenders, acquired Grady's home loan for servicing.

1

On March 4, 2011, Plaintiff filed a *pro se* complaint against OLS and also filed motions for leave to proceed *in forma pauperis* and appointment of counsel. The Court granted Plaintiff leave to proceed *in forma pauperis*, appointed her counsel, and directed appointed counsel to confer with Ms. Grady about filing an amended complaint. On June 30, 2011, Grady filed an amended complaint, which named Ocwen Financial Corporation ("OFC") in addition to Ocwen Loan Servicing, LLC.

Defendants filed a motion to dismiss, and the Court dismissed Counts II, IV, and V of Plaintiff's amended complaint, leaving her with Count I, which alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), and Count III, which alleges unjust enrichment. In short, Grady alleged that Defendants violated the FDCPA by charging and seeking to collect improper fees, costs, and charges that are either not legally due under the mortgage contract or applicable law, or that are in excess of the amounts that are legally due. She also alleged that Defendants have reported credit information that they knew or should have known was false.

In July 2012, Plaintiff responded to Defendants' discovery requests and provided a list of all the charges, fees, disbursements and account adjustments that she contested. On February 28, 2013, Plaintiff supplemented that response to add additional items. After elimination of duplicates on Plaintiff's list, there are 80 items Plaintiff attempts to contest: three disbursements from escrow to pay Plaintiff's insurers; 29 charges that pre-date July 27, 2007; 35 charges after July 27, 2007 but before January 20, 2010; the account adjustment in 2010 that capitalized certain past-due amounts as agreed in the HAMP modification; and 12 charges after the 2010 HAMP modification.

On July 27, 2007, Plaintiff signed a release of claims against OLS as part of a forbearance agreement that saved her from foreclosure. In that agreement, Plaintiff admitted that

she was in default and admitted the amounts past due. Further, the release of claims in that agreement, under the heading "BORROWER RELEASE OF OCWEN," states in part:

> As consideration, the Borrower hereby releases Ocwen from any and all claims known or unknown that Borrower has against Ocwen, which in any way arise from the Note, the Mortgage, the Loan, or the Default. Borrower also specifically waives any right under any statute providing that a release does not extend to claims that the releaser did not know, did not have reason to know, and did not suspect to exist in his favor at the time of executing the release, which, if known by him, would materially affect his settlement with the release.

In the list of charges fees, disbursements and account adjustments that Plaintiff contests, 29 charges pre-date July 27, 2007.

In 2009, Plaintiff again found herself in default under the terms of her mortgage. On October 23, 2009, she signed a trial agreement under the Home Affordable Modification Program ("HAMP"). After completing the trial period, on January 20, 2010, Plaintiff signed a permanent modification agreement under HAMP. In that HAMP modification agreement, Plaintiff again admitted that she was in default and agreed to a new principal balance on her loan that capitalized past-due amounts. The modification also gave her other benefits such as a lower interest rate. Specifically, the agreement stated: "The modified Principal balance will include all amounts and arrearages * * * * The new Principal balance of my Note will be $165,319.92." The loan was modified in OLS's system to comply with the HAMP agreement. Although Ms. Grady now disputes the terms of those agreements, she signed and dated both of them.

## II. Legal Standard on Cross Motions for Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines,*

*Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir.2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

### III.   Analysis of Defendants' Motion for Summary Judgment

####   A.   Grady's Claim Against Ocwen Financial Corporation

Defendants have put forth evidence that it is OLS, not OFC, that has been servicing Grady's loan, and that OFC should be dismissed because it has no connection to the loan. As a general principle, a parent corporation is not liable for the acts of its subsidiaries. However, under the direct participant theory of liability, a parent corporation may be held liable if "there is

sufficient evidence to show that the parent corporation directed or authorized the manner in which an activity is undertaken." *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 242 (Ill. 2007) (holding that "[t]he key elements to the application of direct participant liability, then, are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability"); *Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, No. 05 C 6391, 2007 WL 3037098, at *6 (N.D. Ill. Oct. 16, 2007) (noting that "where there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy *and* carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, the parent company could face liability") (internal quotations omitted). When a corporation specifically directs an activity where injury is foreseeable, or if it mandates an overall course of action and then authorizes the manner in which specific activities contributing to that course of action are undertaken, the corporation can be liable for foreseeable injuries. *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 905-06 (S.D. Ill. 2008).

Plaintiff has not put forth any evidence of wrongdoing by OFC. Instead, in responding to Defendants' summary judgment motion, Plaintiff "accept[ed]" Defendants' representations as to OFC's involvement in this matter. Thus, summary judgment in favor of Defendants is appropriate on Plaintiff's claims against Defendant OFC, and Defendant OFC is dismissed from this matter.

### B. Plaintiff's Claims Pertaining to Non-Lender-Placed Insurance Payments

According to OLS, of the four insurance payments about which Plaintiff complains, only the 2005 payment is for lender-placed insurance (insurance obtained by the lender when a borrower fails to insure her property). The other three payments are to insurers chosen by

Plaintiff, with OLS administering the escrow account on the loan. Plaintiff has not rebutted Defendant's contention.

OLS contends that Plaintiff cannot advance any claim for relief against OLS making requested insurance payments from escrow. Plaintiff does not respond to Defendant's argument regarding the three non-lender-placed insurance payments, and instead discusses only the lender-placed insurance policy from 2005. Thus, summary judgment is appropriate on Plaintiff's claims regarding the three non-lender-placed insurance payments. The Court addresses Plaintiff's claim pertaining to lender-placed insurance below.

### C. Plaintiff's Claims Arising Between 2005 through 2009[1]

#### 1. *Defendants' Answer*

Defendants maintain that Plaintiff waived many of her claims in agreements that she signed in 2007, 2009, and 2010. Plaintiff claims that Defendants have waived these, and other, arguments.[2] Plaintiff attempts to cast all of Defendants' arguments as waived affirmative defenses. However, many of Defendants' theories are not so readily cabined.

In her complaint, Plaintiff, who bears the burden of proof, alleged that improper charges had been added to her account. In its answer, Defendants denied these allegations, stated that there was "no error on Plaintiff's account with Ocwen," and asserted the following affirmative defenses: (i) Plaintiff claims are frivolous, (ii) Defendants did not err in the accounting on Plaintiff's account, and (iii) Plaintiff failed to state a claim. Although Defendants' denials were vague, Plaintiff's amended complaint also is vague. In order to give Defendants a better idea of her claims, in July 2012, Plaintiff provided Defendants with a list of all the charges, fees, disbursements and account adjustments that she contested. Then, on February 28, 2013, Plaintiff

---

[1] Plaintiff's claims between 2005 and 2009 include the 2005 charge for lender-placed insurance.

[2] The following analysis also applies to Defendants' statute-of-limitations arguments.

supplemented that response to add additional items. The record reflects that in early 2013, right around the time that Plaintiff filed her supplemental list and prior to the filing of dispositive motions, Defendants alerted Plaintiff that they believed many of her claims to be null in light of the 2007 forbearance agreement and the 2010 HAMP modification agreement, or barred by the statute of limitations. Plaintiff now claims that Defendants have waived these arguments. The Court disagrees.

First, Defendants' answer and conduct to date have been sufficient to put Defendants' theories before the Court on summary judgment. Furthermore, Plaintiff knew that she signed the agreements, understood the benefits she received from those agreements, and, most importantly, was on notice prior to summary judgment that Defendants intended to assert these exact arguments. She now seeks to avoid two contracts and a federal statute that clearly bar many of her claims. Such a ruling, which would not be on the merits but rather on a technicality, would not comport with the "just, speedy, and inexpensive determination of every action and proceeding." See also *Snyder v. Barry Realty, Inc.*, 60 Fed. Appx. 613, 614 (7th Cir. 2003) (noting that "the law prefers that cases be resolved on their merits").

In its response brief, Defendants represent that they will amend the answer to include the specific affirmative defenses that Plaintiff contends must be pled, if the Court believes that is necessary. "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 720 (7th Cir. 2002). Federal Rule of Civil Procedure 15(a)(2), which addresses amendments before trial, allows a party to amend its complaint with the district court's leave. Fed. R. Civ. P. 15(a)(2). The court should freely give leave when justice so requires but may deny leave to file an amended complaint in the event of "undue delay, bad faith or dilatory

7

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Bausch v. Stryker Corp.,* 630 F.3d 546, 562 (7th Cir. 2010); see also *RR Donnelley & Sons Company v. Xerox Corporation*, 2013 WL 6645472, at *1 (N.D. Ill. Dec. 16, 2013).

In an abundance of caution, the Court grants Defendants leave to amend their answer to include additional affirmative defenses. Plaintiff correctly laid out the standard for granting leave to amend in her summary judgment briefing, noting that the Court's primary concerns are undue delay and prejudice to Plaintiff. The Court liberally grants *pro se* plaintiffs the opportunity to amend their complaints, construes those complaints liberally, and, in some cases, such as this one, recruits counsel to assist plaintiffs in shaping their claims. However, the Court also liberally grants leave to defendants to amend their answers, particularly when a defendant is shooting at a moving and ill-defined target. In fact, courts routinely grant motions to amend pleadings up to the time of, and even during, trial. See Fed. R. Civ. P. 15(b); *Williams v. Iowa Pipeline Assoc., Inc.*, 2008 WL 1946016, at *2 (S.D. Ind. Apr. 29, 2008) ("The issue has been briefed and is before us for resolution; no prejudice exists to any party; therefore the pleadings should reflect those issues * * * * Accordingly, we grant Vectren's motion to amend * * *." ). The decisions in these cases almost uniformly note a preference for deciding cases on the merits. See, *e.g., Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 885 (N.D. Ill. 1999) ("What matters is that at this advanced stage of the proceedings, fairness dictates that a judgment be entered on the merits * * *.").

Here, while there has been some delay, there is no prejudice to Plaintiff. First, Plaintiff has been on notice of OLS's position for some time, certainly before briefing on dispositive

motions began, and also was well aware of the documents that she signed that twice removed her from default on her loan. Second, Plaintiff's supplemental list of charges were provided for the first time in a letter dated February 28, 2013, more than six months after the deadline for amending pleadings. Defendants certainly could have moved to amend their answer sooner, and presumably refrained from doing so in order to save costs. But even if Defendants' actions indicate a desire for the speedy and inexpensive resolution of these type of cases, the lack of prejudice to Plaintiff as well as the Court's preference for resolving claims on the merits dictates that Defendants be allowed to amend their answer.

2. *Plaintiff's Claims*

In July 2007, OLS gave Plaintiff a forbearance agreement, which included a release of all claims by Plaintiff and in which Plaintiff agreed to the amounts owed. In late 2009, OLS gave Plaintiff a HAMP trial modification, and in early 2010, OLS gave Plaintiff a permanent modification under HAMP. As set forth previously, the HAMP modification contract includes a provision setting out the new balance. Plaintiff agreed to the new principal balance, which included all amounts and arrears owed by Plaintiff, and in return received a lower interest rate and additional benefits.

In the 2007 forbearance agreement signed by Plaintiff,[3] Plaintiff admitted that she was in default, admitted the amount past due, and released all claims against OLS. In turn, OLS did not foreclose on the property and provided Plaintiff with the opportunity to make payments on her home, which she was able to do for two additional years. All-encompassing releases such as the

---
[3] Plaintiff argues that the agreement is not enforceable because it is not signed by OLS. But it is signed by Plaintiff, which is all that is necessary in Illinois under these circumstances. See *St. Francis Medical Center v. Vernon*, 576 N.E.2d 1230, 1231 (Ill. App. Ct. 1991) ("Where a contract is enforced on the basis of a single signature, it must generally be signed by the party to be charged under the contract and delivered to the nonsigning party who indicates acceptance by performing."). OLS accepted the agreement by not continuing with the foreclosure process and providing Plaintiff with additional benefits that allowed her to avoid default.

9

one signed by Plaintiff are routinely enforced under Illinois law, and will be enforced here. See, e.g., *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003) (stating that "[u]nder Illinois law, '[a] release is a contract and, as such, is subject to the traditional rules of contract interpretation,'" and that "'[t]he intention of the parties, thus, controls the scope and effect of the release, and this intent is discerned from the release's express language as well as the circumstances surrounding the agreement.'"). Plaintiff's attempt to avoid the terms of the 2007 agreement that she signed fails. Summary judgment in favor of OLS is appropriate on all of Plaintiff's claims regarding the 29 charges prior to July 27, 2007.

Similarly, in the 2010 HAMP modification agreement, Plaintiff admitted that she was in default and agreed to a new principal balance on her loan that would capitalize some past-due amounts in exchange for a lower interest rate and additional benefits that would help her stay current on her payments. The HAMP modification agreement specifically stated, "The modified Principal balance will include all amounts and arrearages * * * * The new Principal balance of my Note will be $165,319.92." The charges that Plaintiff now contests were subsumed in the new principal balance to which Plaintiff agreed. In other words, Plaintiff previously agreed to the new principal balance, which included the amounts she now contests, and therefore cannot now contest the component parts of that balance.[4] Thus, Plaintiff's attempt to contest charges to the loan prior to the HAMP modification fails. Summary judgment in favor of OLS is appropriate on all of Plaintiff's claims regarding the 35 charges that fall after the 2007 release of claims but prior to January 20, 2010, as well as Plaintiff's attack on the 2010 HAMP modification agreement. Plaintiff entered into a contract, which provided her with benefits in

---

[4] As discussed below, even if Plaintiff could still bring an FDCPA claim (because the HAMP agreement did not contain a release), that claim is time-barred.

exchange for the capitalization of past-due amounts, and she has not provided a sufficient basis for challenging the bargain that she struck.

### D. Plaintiff's FDCPA Claims

Plaintiff filed her original complaint on March 4, 2011; thus, any FDCPA claims prior to March 4, 2010, are time-barred. See 15 U.S.C. 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs."); R*andolph v. IMBS, Inc.,* 368 F.3d 726, 730-31 (7th Cir. 2004) (same); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 822 (N.D. Ill. 2013). All of the charges that Plaintiff details in her cross-motion for summary judgment are prior to March 4, 2010. These claims are untimely.

In sum, of the 80 charges, disbursements, and modifications that Plaintiff contests, 64 of them pre-date a release of the claims or a modification on the account and thus are not subject to attack. Another three are payments to Plaintiff's own insurers and thus are not fees or charges by OLS. Additionally, Plaintiff cannot seek to avoid the capitalization of past due amounts that the HAMP modification added to her principal balance, but retain all the benefits of the modification, including the interest rate reduction and avoidance of foreclosure. Plaintiff signed the modification and has not presented a valid reason to void the modification; thus, she is bound by its terms. And finally, any FDCPA claims prior to March 4, 2010, are untimely. For these reasons, summary judgment is granted in favor of OLS on Plaintiff's claims regarding insurance payments and on claims arising between 2005 and the end of 2009.

## IV. Analysis of Plaintiff's Cross Motion for Summary Judgment

### A. FDCPA Claims After March 4, 2010 and Post-HAMP-Modification Unjust Enrichment Claims

Among other things, the mortgage that Plaintiff signed requires that charges are "for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." Plaintiff has presented evidence that OLS performed valuations on 2547 West 118th Street on January 30, 2011, June 9, 2011, and October 18, 2011. These three valuations were performed in an interval that is less than nine months from the original valuation to the third valuation. OLS's 30(b)(6) deponent, Gina Johnson, testified that it is OLS's policy to perform a home valuation if a property is in default. Ms. Johnson further stated that OLS would get new valuations at a six month interval. Each valuation was good for six months and thereafter a new valuation would be performed if a home was still in default. Plaintiff maintains that some of the valuations that were done were unnecessary and redundant and do not serve the purpose of protecting Lender's interest. In short, Plaintiff claims that performing three valuations in less than nine months resulted in unnecessary fees and charges to Plaintiff's account. It is unclear whether Plaintiff seeks to recover for all three violations, or just one.

Defendants contend that the mortgage does not limit valuations to every six months. Rather, the mortgage specifically authorizes property inspections and valuations in Paragraph 14, and also provides that if the borrower has defaulted, then the lender "may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under the Security Instrument, including protecting and/or assessing the value of the Property." Mortgage ¶ 9. Here, there is not enough evidence in the record to determine whether these charges are "reasonable or appropriate to protect Lender's interest." Defendants contend the charges are appropriate based on the mortgage itself; Plaintiff points to Defendant's 30(b)(6)

witness to suggest they were unnecessary. Thus, a genuine issue of material fact exists, and summary judgment is denied as to Plaintiff's claim regarding the valuations.[5]

III. **Conclusion**

For the reasons stated above, the Court grants Defendants' partial motion for summary judgment [67] and dismisses Defendant OFC. The Court directs Defendant OSL to file its amended answer within 10 days of the date of this order. The Court denies Plaintiff's cross motion for summary judgment [75]. The only claim remaining for disposition is Plaintiff's claim that OLS charged for excessive valuations.

Dated: January 21, 2014    _____
　　　　　　　　　　　　　　Robert M. Dow, Jr.
　　　　　　　　　　　　　　United States District Judge

---

[5] Defendants note that only the first of these three charges appear in Plaintiff's discovery list of charges she contests, and that Plaintiff's supplemental response does not add the other two charges. Defendants argue that Plaintiff cannot move for summary judgment on a charge that she never identified. Consistent with the Court's ruling regarding Defendants' defenses, the Court again notes its preference for resolving claims on the merits, and will allow Plaintiff to proceed with her valuation claim. In any event, based on Plaintiff's version of the facts, at best only one of the charges provides a basis for recovery. However, reference to all three illustrates Plaintiff's theory of recovery.